IN THE DISTRICT COURT OF THE UNITED STATES

DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Matthew Seth Yarbrough,  )<br>                                                      )<br>                            Plaintiff,   )<br>                                                      )<br>          vs.                                    )<br>                                                      )<br>Cepheus Deas,                         )<br>                                                      )<br>                            Defendant. )<br>_____) | Civil Action No.  6:14-2165-BHH-KFM<br><br>**REPORT AND RECOMMENDATION** |

       The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

       The defendant Corporal Cephus Deas filed a motion for summary judgment (doc. 45) on October 10, 2014.  By order filed the same date, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately.  When the plaintiff failed to timely respond, the undersigned recommended that the case be dismissed for failure to prosecute (doc. 58).  However, the plaintiff thereafter contacted the court, requesting that the case proceed (doc. 62).  The Honorable Bruce Howe Hendricks, United States District Judge, then remanded the case to the undersigned by order dated May 1, 2015 (doc. 64).  The plaintiff thereafter filed a response to the motion for summary judgment on May 18th (doc. 70).

## **FACTS PRESENTED**

The plaintiff alleges he was subjected to excessive force by Corporal Deas while he was a pre-trial detainee in Horry County, South Carolina. He has since been convicted on robbery charges and is now housed at the Ridgeland Correctional Institution within the South Carolina Department of Corrections.

In his complaint, the plaintiff alleges that on May 6, 2014, he was being housed in the maximum security unity ("MSU") at the J. Reuben Long Detention Center. According to the plaintiff, he smeared his feces "all over the walls in my cell and cell door window" (doc. 1, comp. at 4). He was off his mental health medication at the time (*id*.). According to the plaintiff, Corporal Deas and other officers came to move him from the filthy cell to another one, so they could clean up the mess. The plaintiff was naked and would not put his inmate uniform back on because it had feces on it, so the officers agreed to wrap him in a blanket while he was being escorted to the new cell. The plaintiff put his hands through the food tray slot on the cell door and was handcuffed, and then the cell door was opened and the plaintiff stepped out, where he was wrapped in the blanket. He was then escorted to another cell that was bare except for a toilet (*id*.). The plaintiff alleges that as he was put into the new cell, the door slammed behind him, and he could hear Corporal Deas "say something about my cuffs then the food tray slot was open." (*id*. at 5). He leaned down to ask what he said and noticed that Corporal Deas had his hand behind his back. When he asked Corporal Deas what he was doing, Corporal Deas quickly brought his hand around and sprayed him with pepper spray (*id*. at 4-5). The plaintiff alleges the spray made contact with his face, shoulder, left side, and testicles and that he cussed Corporal Deas and refused to have his handcuffs removed except by an internal affairs officer (*id*. at 6). Another officer came to his cell and asked the plaintiff if "they could please escort [him] to the shower so [he] could wash the mace off" (*id*.). The plaintiff later complied and was taken to the shower, where he was uncuffed and allowed to wash the spray off with soap and water (*id.*). The plaintiff complains

that the spray caused him burning pain and that the incident was unnecessary and the spray excessive, as he was posing no threat since he was handcuffed and locked in a bare cell when Corporal Deas sprayed him (*id.* at 7).

Corporal Deas' account of the incident is basically the same until the point where the plaintiff entered the new cell. In his affidavit filed with his summary judgment motion, Corporal Deas testifies that he was fully aware of the plaintiff's extensive disciplinary record and his "disruptive, violent, dangerous, and combative" behavior, and he provides a summary of the plaintiff's disciplinary record with his affidavit (doc. 45-2, Deas aff. ¶¶ 10, 12). Corporal Deas states that, as the plaintiff entered the new cell, he gave the plaintiff several directives to place his hands through the cell door's food tray slot so the handcuffs could be removed. The plaintiff refused to comply, and instead began laughing. The plaintiff knelt down so his face could be seen through the food tray slot and stated loudly and angrily, "Come get some!" (*id*. ¶¶ 9, 11). Corporal Deas then administered "a small, one-second burst of OC spray" into the plaintiff's cell, making contact with the plaintiff's face and upper right shoulder (*id*. ¶ 12). The plaintiff was again asked to comply, but he still refused, cursing the officers, kicking his cell door, and threatening to punch anyone entering the cell (*id*.). After several minutes, the plaintiff agreed to finally comply and was escorted to the shower area for decontamination without further incident (*id*. ¶¶ 13-14). Medical personnel promptly checked on the plaintiff, and no injuries were noted (*id*. ¶ 14). The incident reports of the other officers also state that the plaintiff repeatedly refused to place his hands through the food tray slot when directed to do so by Corporal Deas, and the plaintiff was thereafter sprayed with OC spray (doc. 45-2 at 14-15, 17-18).

Accompanying Corporal Deas' motion is a video of the incident (*see* doc. 45-2 at 37, video provided to Clerk of Court). The video clearly shows the plaintiff being escorted from one cell to another, the cell door closing behind him, and Corporal Deas then kneeling down by the food tray slot. The video does not have accompanying audio. After the spray

3

was administered, the video depicts Corporal Deas and another officer walking away from the door to a central desk in the cell block a few feet away from the plaintiff's cell. It also shows Corporal Deas and other officers then returning to the plaintiff's cell at different times over the next 25 minutes, checking on the plaintiff through cell door window. The video next shows the plaintiff being escorted out of the cell, exhibiting no apparent distress, to a shower stall. The plaintiff stays in the shower stall for a lengthy period, during which a number of officers and medical staff check on him (*id.*).

Another exhibit appended to the motion for summary judgment is the medical record of a nurse who checked on the plaintiff while he was in the shower (doc. 45-2 at 36). The entry reads: "I/M was in the shower area with his privates covered with a towel. I/M was A&O x3, smiling, pupils equal and reactive. I/M stated that his eyes were fine and that he already rinsed them out. No redness noted to eyes. I/M stated that he was going to do this everyday until he is let out of the suicide suit because he is not going to hurt himself. I/M stated that he was placed in suicide watch because he stated he swallowed a razorblade to get a trip out of the jail." (*id.*).

The plaintiff filed a response in opposition to summary judgment, repeating that the use of spray was unnecessary as he didn't pose a threat at the time. He also adds that the spray should not have been used on him because he was mentally ill (doc. 70 at 1-2).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury

might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Summary judgment is not "a disfavored procedural shortcut" but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

### *Failure to Exhaust Administrative Remedies*

In his motion for summary judgment, Corporal Deas argues that the plaintiff has failed to exhaust his administrative remedies prior to commencing this action. This court agrees. The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that prisoners exhaust their administrative remedies prior to filing civil actions concerning prison conditions under Section 1983 or any other federal law. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that

unexhausted claims cannot be brought in court"). "[T]he PLRA's exhaustion requirement is mandatory," *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Although PLRA exhaustion is not jurisdictional, failure to exhaust is an affirmative defense that can be pleaded by the defendant. *Jones*, 549 U.S. at 216; *Anderson*, 407 F.3d at 681. "[U]nexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204. It also has the "potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.*" Id.*

The PLRA requires "proper exhaustion" of available administrative remedies prior to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006). As the Supreme Court noted, "[a]ggrieved parties may prefer not to exhaust administrative remedies for a variety of reasons," whether it be concerns about efficiency or "bad faith." *Id.* at 89-90. This is especially true in a prison context. *Id*. at 90 n.1. Nevertheless, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

The plaintiff contends he filed a number of grievances concerning the May 6th incident (comp. at 2). Attached to his complaint is a single grievance (doc. 1-1) dated May 26th, which the plaintiff claims was returned to him unprocessed by an officer, because Corporal Deas "had been terminated" (*id.* at 7). In it, the plaintiff requests as relief a transfer to "B-1 instead of MSU" (doc. 1-1 at 2). As shown by the numerous misconduct entries in his disciplinary summary, the plaintiff remained in the MSU through at least September (doc. 45-2 at 29-33). In any event, given that the plaintiff's complaint was filed in this court on

6

June 4th, only a few days after his grievance was filed (and less than a month after the incident itself), the plaintiff has failed to satisfy this court that he exhausted his administrative remedies by allowing the detention center sufficient time to respond and attempt to resolve his grievance. Further, as argued by the defendant, other grievances admittedly filed by the plaintiff had not yet been processed when the plaintiff filed his case here. As exhaustion is mandatory, the plaintiff's case should be dismissed.

*Excessive Force on Pre-Trial Detainee*

The plaintiff's claim also fails on the merits. A pre-trial detainee's claim of excessive force is analyzed under the Due Process Clause of the Fourteenth Amendment. *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008). To succeed on such a claim, the plaintiff must demonstrate that the defendant "inflicted unnecessary and wanton pain and suffering" upon the detainee. *Whitley v. Albers*, 475 U.S. 312, 320 (1986); *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008). The core judicial inquiry turns on whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Moreover, due deference must be accorded to an officer's efforts to restrain a detainee when faced with a dynamic and potentially violent situation; otherwise, "we would give encouragement to insubordination in an environment which is already volatile enough." *Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir.1999). The Fourth Circuit has expressly recognized that the limited application of mace or similar chemical munitions may be more humane and effective than a flesh to flesh confrontation with an inmate, and is not a *per se* constitutional violation. *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996).

While the plaintiff maintains that he was unnecessarily sprayed since he was handcuffed and in a cell at the time, Corporal Deas has presented convincing and overriding evidence that the pepper spray was administered in good faith to maintain and restore

7

discipline, rather than maliciously or sadistically to cause pain. First, leading up to the incident, the plaintiff had consistently demonstrated himself as a violent and dangerous inmate, as shown by his uncontradicted disciplinary summary (doc. 45-2 at 25-29). For example, in the two days prior to the incident at issue here, the plaintiff claimed to swallow a razor blade, rubbed feces on the walls and door of his cell, and charged toward an officer and had to be restrained (*id.* at 28-29). Corporal Deas testifies, again without contradiction, that he was aware of the plaintiff's propensity for violence and combativeness (Deas aff. ¶ 10). Immediately prior to his being sprayed, the plaintiff was admittedly off his mental health medication and had smeared his feces all over his cell (comp. at 4). Given this backdrop, Corporal Deas was certainly justified in preparing to use appropriate force to gain control of the plaintiff during the transfer to the new cell. As shown by the video, Corporal Deas and other officers acted professionally in escorting the plaintiff into the cell, which occurred without incident. Only after the door was closed for approximately fifteen seconds did Corporal Deas kneel down to administer a short burst of spray through the cell door food tray slot. Regardless of whether the plaintiff, as he alleges, was simply attempting to ask Corporal Deas a question when he was sprayed, or as Corporal Deas maintains, the plaintiff was refusing to relinquish his handcuffs as directed, the limited use of pepper spray by Corporal Deas under these circumstances does not arise to an unconstitutional application of excessive force. The court notes that the video of the incident shows that the plaintiff was checked by a number of officers immediately after the spray was administered and that he exited his cell in no apparent distress 25 minutes later (doc. 45-2 at 37, video). He then was taken to the shower, where the medical staff met him and reported that he was smiling with no redness in his eyes (doc. 45-2 at 36). Given this uncontradicted evidence, the amount of force used by Corporal Deas cannot be deemed excessive, and the plaintiff has failed to establish otherwise. Moreover, the plaintiff has failed to show that Corporal Deas acted

maliciously or sadistically in any way towards him. Accordingly, his case is without merit and should be dismissed.

*Eleventh Amendment Immunity*

Corporal Deas is entitled to Eleventh Amendment immunity for actions taken in his official capacity. *See Brown v. Lieutenant Governor's Office on Aging*, 697 F. Supp. 2d 632, 635 (D.S.C. 2010) (citing *Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995)).

*Qualified Immunity*

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id*. As discussed above, Corporal Deas did not violate the plaintiff's constitutional rights, so he is entitled to qualified immunity from suit here.

## CONCLUSION AND RECOMMENDATION

Therefore,

IT IS RECOMMENDED that the defendant's motion for summary judgment (doc. 45) be granted. The attention of the parties is directed to the notice on the next page.

June 17, 2015                                              s/ Kevin F. McDonald
Greenville, South Carolina                         United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).